STEPHEN V. R. SPAULDING, as Member of Divisional Code Authority, Division No. 3, Retail Solid Fuel Industry, State of New York, and Others, Plaintiffs, *v.* PETER KAMINSKI and Others, Individually and as Copartners, Doing Business under the Firm Name and Style of KING FUEL COMPANY, Defendants.

Supreme Court, Erie County, December 4, 1934.

*Sidney B. Pfeifer*, for the plaintiffs.

*Samuel M. Fleischman*, for the defendants.

SWIFT, J. This is a motion for an injunction to restrain the defendants from selling coke at a price less than that which the coal merchants in this area have determined to be the " lowest cost," as provided in the Code of Fair Competition for the Solid Fuel Industry, approved by the President of the United States under the National Industrial Recovery Act. The facts are not in dispute.

The defendants contend that inasmuch as they are not engaged

in interstate or foreign commerce, Congress has no authority under the Constitution of the United States to dictate to them as citizens of New York State at what price they shall sell their goods in this State. The correctness of this contention may be conceded for the purpose of this motion, because the Legislature, by the Industrial Recovery Act of the State (Laws of 1933, chap. 781), has declared the above-mentioned code to be " the standard of fair competition for " the retail solid fuel " industry in the state as to transactions intrastate in character."

This " code " provides that the selling of coke at a price less than the determined cost " shall be deemed an unfair competitive practice in violation of the requirements of this code." The " determined cost " of coke is greater than the price at which defendants are selling it to the public.

The defendants' argument that the " code " fosters a monopoly and compels the public at large to pay an extortionate price for a prime necessity of life, strikes at the wisdom of the legislation, and should be addressed to the electorate and not to the judiciary.

The Legislature has the undoubted power to define acts of unfair competition; even to fix minimum prices in times of emergency. (*Nebbia* v. *New York*, 291 U. S. 502.) By its Industrial Recovery Act it has in effect declared that the acts of the defendants in selling below the " determined cost " constitute unfair competition, and it has invested the Supreme Court with jurisdiction to restrain such acts. Defendants· must concede the legislative power to so act, but they maintain that in the exercise of that power the Legislature violated the Constitution of the State in two respects: *First*, it delegated its power to legislate to the President, and *second*, it made the National Industrial Recovery Act a part of its act without insertion therein of the provisions of the National act, contrary to article 3, section 17, of the State Constitution.

It must be observed that this motion is not concerned with that provision of the State Industrial Recovery Act which declares any violation of any provision of a code to be a misdemeanor. Declaring it a crime to violate any rules thereafter to be made by those who hold no position in the State service, is vastly different from enacting that such rules shall be the standard of fair competition within the State.

The Legislature declared it to be the policy of this State " to make uniform the standards of fair competition prevailing in intrastate commerce and industry with those of interstate commerce required by the provisions of said national industrial recovery act." The practical way to accomplish this is to make interstate standards those of intrastate commerce. This the Legislature did regardless

of what those standards might be, just as when it desired to have the same standards of weights and measures used by the Federal and State governments, it provided that " such new weights, measures, * * * as may be received from the United States as standards * * * shall be the standards * * * throughout this state." (Agriculture and Markets Law, § 176.) The whole policy of the Legislature is declared in the act. The details — and there is a wealth of detail — are left to others, but from the very nature of the act the Legislature has indicated that its policy is not concerned with those details. Any standard whatsoever adopted by the Federal government must be the standard in this State. Such legislation may be hasty and attended with risk, but it appears to be legislation rather than a delegation of the power to legislate.

The provision of the State Industrial Recovery Act that the standard of fair competition in intrastate commerce is that required by the provisions of the National act is not in violation of article 3, section 17, of the State Constitution. The National act is not made or deemed a part of the State act. It is simply the " *codes* " which, when made as provided in the National act and filed with the Secretary of State, are to become standards in this State.

For years the courts have used their own concept of business morality to determine whether or not certain acts constituted unfair competition. It is conceivable that even before the passage of the State Industrial Recovery Act some business men would have considered the defendants' acts unfair. The so-called Donnelly Anti-Monopoly Act would have precluded any court from so holding; but the provisions of that act have been repealed, and the Legislature has decreed that any act declared to constitute unfair competition in interstate commerce shall be unfair in commerce and industry within the State. Defendants' acts would be unfair in interstate commerce; therefore, the court must hold them unfair in intrastate industry.

The motion of the plaintiffs is granted.